# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TARONIS FUELS, INC., *et al.*,[1] | Case No. 22-11121 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

**DEBTORS' EMERGENCY MOTION PURSUANT TO SECTIONS 105(a), 362 AND 365 OF THE BANKRUPTCY CODE TO (I) COMPEL PERFORMANCE OF LBJ'S OBLIGATIONS UNDER AN EXECUTORY CONTRACT, (II) TO ENFORCE THE AUTOMATIC STAY, AND (III) ENFORCE THE SALE ORDER**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") pursuant to sections 105, 362 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") for entry of an order substantially in the form attached hereto as **Exhibit A** to: (i) compel performance of LBJ's, a California General Partnership, obligations under an executory contract; (ii) enforce the automatic stay; and (iii) enforce this Court's *Order (I) Authorizing the Private Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing Sellers to Assume and Assign Certain Executory Contracts, (III) Approving Bidder Protections, and (IV) Granting Other Related Relief* (the "Sale Order") [Docket No. 135] authorizing the Debtors to sell certain of their assets to Airgas USA LLC ("Airgas" or "Buyer") pursuant to that certain Agreement for Sale and Purchase (the "Woodland PA") entered into in connection with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits (if any) of each Debtor's federal tax identification number include: Taronis Fuels, Inc. (7454), MagneGas Welding Supply – West, LLC (6662), Taronis Sub III LLC (5826), MagneGas Welding Supply – South, LLC (8686), MagneGas Real Estate Holdings, LLC (7412), MagneGas IP, LLC (0988), MagneGas Production, LLC (7727), Taronis Sub I LLC (4205), Taronis-TAS, LLC (2356), Taronis-TAH, LLC (3542), and Taronis Sub II LLC (9673). The location of the Debtors' service address in these chapter 11 cases is 24980 N. 83rd Avenue, Suite 100, Peoria, Arizona 85383.

the sale of the Debtors' California business to Airgas (the "CA APA"), attached as **Exhibit B.** In support of this Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1. The Debtors seek entry of an order directing LBJ to comply with the terms of the LBJ Agreement, pursuant to which LBJ sold the Woodland Property to the Debtors. Specifically, the Debtors request that LBJ be compelled: (i) to assist, as necessary, with all necessary communications or documentation to effectuate the satisfaction of the Wells Fargo Mortgage related to the Woodland Property; (ii) to deliver the Recording Instructions (as defined in the LBJ Agreement and discussed herein) to the Woodland Escrow Agent to record the Woodland Deed; and (iii) executing all further documentation and cooperating as necessary to facilitate the transfer of title to Airgas.

2. The Debtors seek this relief because the principals of LBJ, Joseph Knierem and Robert Baker, have been vocal and clear that they have no intention of honoring their obligations under the LBJ Agreement and intend to frustrate the sale of the Woodland Property unless all of their economic demands are met. Those demands are that: (i) all amounts due under the LBJ Note be paid in full; and (ii) all amounts due under pre-petition non-compete agreements with Knierem and Baker are paid in full (Airgas did not request an assignment of either non-compete agreement and any amounts due are pre-petition unsecured claims).

3. Indeed, following closing of the CA APA, on December 14, 2022, Mr. Knierem refused to perform his duties on his last day as an employee of the Debtors to turn over the keys and electronic access codes to the Woodland Property, which Airgas is leasing from the Debtors

---

[2] Capitalized terms used in the preliminary statement shall be defined as described herein.

pending a closing on the Woodland PA, holding the keys and access codes hostage unless Mr. Knierem's and Mr. Baker's personal economic demands were met. *See* December 14, 2022 Letter, attached as **Exhibit C**.

4. The members of LBJ, both of whom are now former employees of the Debtors, acting on behalf of themselves and on behalf of LBJ, have made it abundantly clear that they will not honor the LBJ Agreement, an executory contract with the Debtors and that they intend to frustrate the Woodland PA and the Sale Order. By doing so, they are willfully violating sections 362 and 365 of the Bankruptcy Code.

## JURISDICTION

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order* of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The bases for the relief requested herein are sections 105(a), 362 and 365 of the Bankruptcy Code.

## BACKGROUND

8. On January 4, 2021, the Debtors and LBJ entered that certain Real Estate Purchase and Sale Agreement dated January 4, 2021, attached hereto as **Exhibit D** (as amended, and

including all exhibits, the "LBJ Agreement").

9. Under the LBJ Agreement, the Debtors acquired all of LBJ's interest in the real property located at 1590 East Kentucky Avenue, Woodland, CA 95776 (the "Woodland Property") for a purchase price of $1,516.650. *See* LBJ Agreement, Section 1.1. Pursuant to the LBJ Agreement, the Debtors:

a. Provided a down payment of $200,000;

b. Assumed responsibilities for payments owed by LBJ to Wells Fargo Bank N.A. ("Wells Fargo") under a loan agreement pursuant to which LBJ was the borrower and Wells Fargo the lender (the "Wells Fargo Loan") which then had a balance of $206,853.09 and which was secured by a mortgage on the Woodland Property (the "Wells Fargo Mortgage"); and

c. Issued a promissory note (the "LBJ Note") to LBJ in the principal amount of $994,539.28.

10. Pursuant to Section 2.1 of the LBJ Agreement, LBJ executed a grant deed (the "Woodland Deed") which was placed into escrow with the Law Offices of Robin Clark Bevier, P.C. (the "Woodland Escrow Agent"). Section 2.1 of the LBJ Agreement further obligates LBJ to take commercially reasonable steps to work with Wells Fargo to have the Wells Fargo Loan satisfied and the Wells Fargo Mortgage reconveyed.

11. Following such satisfaction and reconveyance, LBJ and the Debtors are required to direct the Woodland Escrow Agent to record the Woodland Deed and take any other action with respect to the Woodland Deed (the "Recording Instructions"). LBJ is further required to take all other necessary steps to ensure that the Debtors have "good and clean title to the [Woodland] Property following the Conveyance Date and, if necessary, execute a replacement deed or

document evidencing ownership of the [Woodland] Property by the [Debtors]". LBJ Agreement, § 2.1.

12. To secure the Debtors' obligations under the LBJ Note, if there was an uncured event of default under the LBJ Note, the LBJ Agreement provided that LBJ had the right to instruct the Woodland Escrow Agent to cancel the escrow and return the Woodland Deed to LBJ, who could then destroy the deed and retain title to the Woodland Property. Importantly, LBJ was not granted a mortgage on the Woodland Property to secure the LBJ Note. Nor is there any remedy granted to LBJ with respect to the Woodland Property following delivery of the Recording Instructions and conveyance of title to the Debtors.

13. In the event of "any action at law or equity" between the Debtors and LBJ to enforce the terms of the LBJ Agreement, the unsuccessful party in that action shall pay the prevailing party's legal fees and costs. *See* LBJ Agreement, § 6.11.

14. On November 16, 2022, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Authorizing the Private Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Sellers to Assume and Assign an Executory Contract, (III) Approving Bidder Protections, and (IV) Granting Other Related Relief*, [Docket No. 40] (the "CA Private Sale Motion").[3] As described more fully in the CA Private Sale Motion, Airgas was to purchase, among others, the Woodland Property from the Debtors.

15. On December 12, 2022, the Court granted the CA Private Sale Motion and entered the Sale Order [Docket No. 135] (the "Sale Orde"), authorizing, among other things, the Debtors' entry into the CA APA and the Woodland PA with Airgas.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the CA Private Sale Motion.

16. Pursuant to the Sale Order and the CA APA, a closing on the CA APA occurred on December 14, 2022. Because of the expected issues with LBJ, the closing on the Woodland PA was delayed and has until January 31, 2023 to close. *See* Declaration of R. Jered Ruyle, ¶ 6 ("Ruyle Dec."). In the interim, the Debtors were authorized to enter into a lease for the Woodland Property with Airgas to give Airgas access to the Woodland Property pending a closing of the Woodland PA. When the Woodland PA does close, Airgas will be purchasing the Woodland Property free and clear of all liens and encumbrances. *See* Sale Order at ¶ T, U. Additionally, the Sale of the Woodland Property is not subject to the approval or consent of any Person. *See* Sale Order at ¶ 12. Further, no lienholder or other person on the Woodland Property is allowed to interfere with Airgas' purchase of the Woodland Property. *See* Sale Order at ¶ 15.

17. On December 14, 2022, Airgas attempted to enter the Woodland Property pursuant to its rights under the lease. Rather than be provided with access, it was provided with the letter from Mr. Knierem refusing to turn over the keys and electronic access codes to Airgas, which he was in possession of by reason of his employment with the Debtors, not his interest in LBJ. *See* Ex. C; Ruyle Dec., ¶ 7. The letter further demanded that LBJ be paid all amounts due under the LBJ Note and each individual receive payment in full for amounts under the pre-petition non-competition agreements. Ex. C. Pursuant to the December 14 letter and statements by LBJ to Mr. Ruyle, LBJ has made clear that it has no intention of complying with the LBJ Agreement and instead is seeking to interfere with the disposition of the Woodland Property, Sale Order, and the automatic stay. *See* Ex. C; Ruyle Dec., ¶ 8.

18. To keep the closing of the Woodland PA on track, the Debtors would like to send a wire payment directly to Wells Fargo[4] in excess of the amount due on the Wells Fargo Loan in order to pay off the Wells Fargo Loan, satisfy the Mortgage, and take the necessary steps to have the Woodland Escrow Agent release the Woodland Deed. To that end, on December 16, 2022, Debtors requested a payoff letter from Wells Fargo.

19. On December 20, 2022, Wells Fargo responded, stating that before it could provide the payoff letter, it would "need borrower authorization with a written signature in order to move forward with your request." December 20, 2022 email, attached as **Exhibit E**. Because the Wells Fargo Loan is in the name of LBJ, LBJ's authorization is required to pay off the Wells Fargo Loan and to provide a letter regarding satisfaction and reconveyance. Receipt of such documentation is a predicate for issuing the Recording Instructions as well as to LBJ's obligation to execute such other documents as necessary to deliver good and clean title of the Woodland Property to the Debtors.

20. However, LBJ has refused to cooperate and given the extralegal actions of LBJ, Mr. Knierem and Mr. Baker to date, the Debtors determined that requesting their voluntary performance under the LBJ Agreement would be futile.

## RELIEF REQUESTED

21. Pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, the Debtors requests that the Court compel LBJ to perform its obligations under the LBJ Agreement, cooperate in paying off the Wells Fargo Loan, and provide the Recording Instructions to the Woodland

---

[4] Previously, the Debtors had wired amounts due to an LBJ controlled account and Wells Fargo then was electronically paid from the LBJ account.

Escrow Agent to record the Woodland Deed and take any and all other necessary steps to ensure Debtors have good and clean title to the Woodland Property to convey to Airgas.

**ARGUMENT**

**A.     The LBJ Agreement is an Executory Contract That Can Be Enforced by the Debtors**

22.     Executory contracts "generally include[] contracts on which performance remains due to some extent on both sides." *In re Bradlees Stores, Inc.*, 2001 WL 1112308, at *6 (S.D.N.Y. Sept. 20, 2001).  Under the Countryman test, a contract will be deemed executory if it is one "under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id.*; *see also In re Weinstein Co. Holdings LLC*, 997 F.3d 497, 504 (3d Cir. 2021) (describing Countryman test); *In re Munoz*, 610 B.R. 907, 911 (Bankr. D.N.M. 2019) ("real estate contracts are 'executory contracts' subject to § 365") (citing *Shaw v. Dawson*, 48 B.R. 857, 860 (D.N.M. 1985)).

23.     A counterparty to an executory contract may be compelled to perform its obligations under that contract.  *See In re McLean Indus., Inc.*, 96 B.R. 440, 449 (Bankr. S.D.N.Y. 1989) ("debtor-in-possession's ability . . . to compel performance with respect to assumable executory contracts is usually the life blood of its reorganization.").

24.     The LBJ Agreement readily meets the definition of an executory contract pursuant to Section 365 of the Code.  Specifically, the LBJ Agreement provides that material performance remained due by both parties—payment by the Debtors and title conveyance by LBJ.

25.     Because the LBJ Agreement is an executory contract, LBJ *must* continue to perform all of its obligations under the LBJ Agreement, including those provided in Section 2.1 of the LBJ Agreement, and this Court can compel the performance of the same.  Accordingly, LBJ

8

should be compelled to comply with Section 2.1 of the LBJ Agreement, including, but not limited to cooperating with the Debtors and taking all necessary steps to permit the payoff of the Wells Fargo Loan, ensure the Recording Instructions are delivered, and good and clean title of the Woodland Property is delivered to Debtors for conveyance to Airgas.

**B.     The Court is Authorized to Compel LBJ to Comply with the Sale Order**

26.     Even if the LBJ Agreement was not an executory contract, the relief sought here is appropriate. While a claim for equitable relief is generally brought as an adversary proceeding, this general rule does not apply where, as the case is here, a debtor seeks to enforce an order previously issued by the Court. *See In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (an "adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained"); *see also Cont'l Airlines, Inc.*, 236 B.R. at 325-27 (court has inherent authority to enforce its own orders); *In re Marcus Hook Dev. Park, Inc.*, 934 F.2d 261, 266 (3d Cir. 1991) (Section 105(a) of the Code authorizes bankruptcy courts to issue any order as necessary to carry out the provisions of the Code and "gives the bankruptcy court the power and the jurisdiction to enforce its valid orders.") (internal quotation omitted).

27.     Thus, specific performance is appropriate through this Motion. Specifically, the Debtors simply seek to enforce the injunction in the Sale Order, which enjoins any person or entity from interfering "with [Airgas'] use and enjoyment of the [Property]." Sale Order, ¶ 15. LBJ is in clear violation of the Sale Order: it has intentionally and wrongly denied Airgas' entry to the Woodland Property, which in turn directly interferes with the Debtors' ability to transfer the Woodland Property to Airgas pursuant to the Sale Order and CA APA. LBJ's apparent refusal to cooperate as required under Section 2.1 likewise impedes on Airgas' ability to use and enjoy the

9

Woodland Property and the Debtors' requirement to convey the same, violating the LBJ Agreement and the Sale Order.

28. Accordingly, the Court should exercise its authority: (i) to enforce the terms of the Sale Order; (ii) compel LBJ to turn over the Woodland Property to Airgas, including providing keys and all applicable access codes, and perform under the LBJ Agreement, including its obligations under Section 2.1; and (iii) prohibit LBJ from further attacking or seeking to undermine the Sale Order. *See WorldCorp, Inc.*, 252 B.R. at 895.

**C.  The Court Has the Authority to Compel LBJ's Performance and Enforce the Automatic Stay**

29. The Debtors' contractual rights under the LBJ Agreement are property of the estate protected by the automatic stay. *See, e.g.*, *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("Courts have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay.") (citations and internal quotations omitted); *In re EBC I, Inc.*, 356 B.R. 631, 639 (Bankr. D. Del. 2006) (same); *In re Ernie Haire Ford*, 403 B.R. 750, 760 (Bankr. M.D. Fla. 2009) ("[Debtor's] rights under these executory contracts are property of the bankruptcy estate, and, therefore, exercising a terminable-at-will provision is not permitted without relief from stay.").

30. LBJ's unlawful attempts to exercise control over the Woodland Property by failing to perform under the LBJ Agreement and by preventing Airgas' entry upon the Woodland Property violates the automatic stay. This Court is well within its authority to address these violations by compelling LBJ to perform under the LBJ Agreement. *In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009) ("By refusing to perform its obligations under the Member Agreement, NCTC is interfering with Broadstripe's property rights under the Member Agreement

and acting in violation of the automatic stay."); *Cont'l Energy Assocs. Ltd. L.P. v. Hazleton Fuel Mgmt, Co. (In re Cont'l Energy Assocs. L.P.*, 178 B.R. 405, 408-09 (Bankr. M.D. Pa. 1995) (compelling non-debtor supplier to continue providing natural gas to debtor pursuant to parties' contract); *In re Feyline Presents, Inc.*, 81 B.R. 623, 626 (Bankr. D. Colo. 1988) ("If a nondebtor party could unilaterally cease performance on an executory contract, the powers provided to a debtor under § 365(d) would have no meaning.").

### D. LBJ Should Pay the Debtors' and Airgas' Costs and Attorneys' Fees

31. The Debtors and Airgas may seek costs and attorneys' fees in connection with bringing this Motion. *See In re Abacus Broad. Corp.*, 150 B.R. 925 (Bankr. W.D. Tex. 993) (Court may award costs and attorneys' fees pursuant to the court's contempt powers under 11 U.S.C. § 105(a)). Pursuant to this Court's equitable powers under section 105(a), the Court should order LBJ to pay all of the Debtors' and Airgas' costs and reasonable attorneys' fees incurred in connection with this Motion. LBJ had actual knowledge of the Debtors' bankruptcy filings, the automatic stay, and the Sale Order, but refused to seek relief from the Court before interfering with the Debtors' ability to transfer its assets to Airgas as described herein. LBJ has intentionally and wrongfully deprived Airgas of the benefit of its bargain under the CA APA and Sale Order. Accordingly, the Court should order LBJ to bear the economic consequences of forcing both the Debtors and Airgas to pursue this Motion, including payment of their costs and reasonable attorneys' fees.

### E. Reservation of Funds with Respect to the LBJ Note

32. As noted above, the LBJ Note is not secured by a mortgage on the Woodland Property. LBJ's only remedy with respect to the Woodland Property is for the cancellation of the escrow and return of the Woodland Deed. Pursuant to the LBJ Agreement, and because the

Debtors have satisfied the Wells Fargo Loan, they are entitled to receipt of the Woodland Deed. LBJ Agreement, § 2.1. Thus, to the extent the Court grants the relief requested in the Motion, LBJ will no longer have any recourse with respect to the Woodland Property. Therefore, the Debtors' performance obligations under the LBJ Note may no longer be secured and the LBJ Note is an unsecured pre-petition obligation. In such case, it would be improper to make any payments on account of the LBJ Note in connection with a closing on the Woodland PA. Instead, the Debtors seek to reserve an amount equal to the balance of the LBJ Note as of the Petition Date from the proceeds of the Woodland PA, which will be $1.2 million less customary closing costs of a seller. The Court can make a determination of the extent, validity and priority of LBJ's claim on the LBJ Note pursuant to a later and separate proceeding.

33. The Debtors submit such reservation adequately protects whatever interest LBJ may have in the Woodland Property and satisfies section 363(f) of the Bankruptcy Code.

## NOTICE

34. The Debtors have provided notice of this Motion to the following parties or their respective counsel: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Woodland Escrow Agent; (iv) the Law Offices of Robin Clarke Bevier, PC as counsel to Joseph Knierem, Robert Baker and LBJ and as Woodland Escrow Agent; (v) the Office of the Attorneys General for the State of Delaware; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) the Securities Exchange Commission; (ix) Wells Fargo, N.A.; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

35. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE the Debtors respectfully request that the Court enter the proposed order attached hereto as **Exhibit A** and grant such other and further relief as the Court may deem just and appropriate.

Dated: December 22, 2022  Respectfully submitted,
Wilmington, Delaware

*/s/ Jesse L. Noa*
Jeremy W. Ryan (No. 4057)
Jesse L. Noa (No. 5973)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
jnoa@potteranderson.com
abrown@potteranderson.com

*Counsel for the Debtors and Debtors in Possession*