# EXHIBIT D

## LBJ Agreement

**REAL ESTATE**
**PURCHASE AND SALE AGREEMENT**

      **THIS REAL ESTATE PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is effective as of this 4ᵗʰ day of January, 2021 (the "**Effective Date**"), by and between **LBJ**, a California general partnership (the "**Seller**"), **MAGNEGAS REAL ESTATE HOLDINGS, LLC**, a Delaware limited liability company (collectively the "**Buyer**"), and solely for purposes of Section 2.1 of this Agreement, the Law Offices of Robin Clark Bevier, PC, located at 2479 Sunrise Boulevard, Gold River, CA 95670 ("**Escrow Agent**").

**RECITALS:**

      **WHEREAS**, Seller is the owner in fee simple of that certain parcel of real property situated in Yolo County, California, as described in this Agreement, and having the legal description as given on the attached **Exhibit A**.

      **WHEREAS**, Seller desires to sell the real property, and Buyer desires to purchase the real property, on the terms and subject to the conditions set forth in this Agreement.

      **WHEREAS**, Seller and Buyer are parties to that certain Commercial Lease Agreement, dated as of April 4, 2018 (the "**Lease**"), pursuant to which Seller leases to Buyer the Property (as defined herein) at a rate of $14,000 per month.

      **WHEREAS**, Buyer desires to pay to Seller owed but currently unpaid rent under the Lease in the amount of One Hundred Thirty-Six Thousand Six Hundred Fifty and No/100 Dollars ($136,650).

      **NOW, THEREFORE**, in consideration of the covenants contained in this Agreement, and other good and valuable consideration, the receipt, sufficiency and adequacy of which are acknowledged by the parties, Seller and Buyer, each intending to be legally bound hereby, covenant and agree as follows:

**Article I**
**Purchase and Sale of the Property; Rent**

      **Section 1.1**    **Purchase**. Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, all of Seller's right, title and interest in and to the real property commonly known as 1590 East Kentucky Avenue, Woodland, CA 95776, legally described on the attached **Exhibit A** (the "**Land**"), together with any and all rights, restrictions, easements, rights-of-way, buildings, structures, appurtenances and other improvements benefitting or otherwise relating to the Land, and to which the Seller has an interest (together with the Land, the "**Property**").

      **Section 1.2**    **Purchase Price**. The aggregate purchase price for the Property (the "**Purchase Price**") shall be **One Million Five Hundred Sixteen Thousand Six Hundred Fifty and No/100 Dollars ($1,516,650),** consisting of the following:

          (a)    **One Million and No/100 Dollars ($1,000,000)** in cash towards the Purchase Price.

1

(b) **Three Hundred Eighty Thousand and No/100 Dollars ($380,000)** in cash towards the Purchase Price for Seller's payment of partnership interest obligations to the Estate of Leroy Paulucci.

(c) **One Hundred Thirty-Six Thousand Six Hundred Fifty and No/100 Dollars ($136,650)**, which is inclusive of all fees, costs, and other expenses under the Lease (the "**Unpaid Rent**").

**Section 1.3      Credits to Purchase Price.**

(a) **Three Hundred Six Thousand Eight Hundred Fifty-Three and 09/100 Dollars ($306,853.09)** of the Purchase Price shall be credited to Buyer for assuming all of the financial obligations of Seller pursuant to the mortgage loan with Wells Fargo Bank, N.A. related to the Property (the "**Mortgage**").

(b) **Fifteen Thousand Two Hundred Fifty-Seven and 63/100 Dollars ($15,257.63)** of the Purchase Price shall be credited to the Buyer for assuming all of the financial obligations of Seller related to the asset/debt consolidation loan.

**Section 1.3      Unpaid Rent; Lease.** Seller and Buyer agree that, as of the Effective Date, Buyer owes Seller the Unpaid Rent. Buyer agrees to pay the Unpaid Rent to Seller in accordance with Section 1.4. Seller and Buyer agree that after the Effective Date, Buyer shall have no further rent or any other payment obligations under the Lease and the Lease shall be deemed automatically terminated. On and after the Effective Date, Buyer shall take full possession of the Property at its new owner.

**Section 1.4      Payment of the Purchase Price; Effective Date Deliveries.** The Purchase Price and Unpaid Rent shall be paid by Buyer to Seller as follows:

(a) On the Effective Date, Buyer shall pay to Seller **$200,000** in cash by check or wire transfer of immediately available funds to the account set forth on **Schedule 1.3**.

(b) After the Effective Date, Buyer shall take over all payments due and owing under the Mortgage on behalf of Seller, until the Mortgage is paid-off in full. Buyer shall make the Mortgage payments directly to Wells Fargo Bank, N.A. on behalf of Seller. Buyer agrees to indemnify Seller for the Mortgage payments pursuant to Article VIII.

(c) The balance of the Purchase Price, in the amount of **Nine Hundred Ninety Four Thousand Five Hundred Thirty Nine and 28/100 ($994,539.28),** will be payable to Seller pursuant to a secured Promissory Note in substantially the same form and substance as the Form of Promissory Note attached hereto as **Exhibit B** (the "**Promissory Note**"), to be delivered to the Seller from the Buyer on the Effective Date. The Promissory Note will be amortized over ten (10) years, have an interest rate of Five Percent (5%) per annum, and a term of two (2) years. Payments under the Promissory Note will be made in equal monthly installments. The Promissory Note will be secured by the Property.

**Article II**
**Grant Deed; Title Conveyance; Insurance**

**Section 2.1      Grant Deed; Title Conveyance.**      On the Effective Date, Seller shall execute a grant deed in substantially the same form and substance as the Form of Grant Deed attached hereto as **Exhibit C** ("**Deed**") and deliver it to Escrow Agent to be placed in Escrow Agent's safe or

2

another secure location at Escrow Agent's premises. Escrow Agent agrees to hold the Deed in escrow until mutual written instructions are received from both Seller and Buyer instructing Escrow Agent to (a) record the Deed (the "**Recording Instructions**") or (b) take any other action with respect to the Deed. Seller and Buyer agree to deliver the Recording Instructions to Escrow Agent as soon as possible but no later than three (3) business days following the date upon which Wells Fargo Bank, N.A. releases title to the Property by recording a full reconveyance. Seller and Buyer agree to take commercially reasonable steps to work with Wells Fargo Bank, N.A. to have it promptly record the full reconveyance and provide evidence of payoff following the date the Mortgage is paid in full. Escrow Agent agrees to record the Deed as soon as possible but no later than five (5) business days after the date Escrow Agent has received both the Recording Instructions and Recording Fees (as defined below), and shall promptly provide evidence of such recording to Buyer and Seller; provided, however, that in the event there are any issues with the recording of the Deed due to issues with title, Buyer not delivering sufficient Recording Fees to Escrow Agent to complete the recording, or otherwise, Escrow Agent shall have such additional time as necessary to effect the recording and soon as reasonably practicable following the Conveyance Date and shall promptly provide evidence of such recording to Seller and Buyer. Seller shall cooperate with Buyer and Escrow Agent in good faith and take all reasonable steps to ensure that Buyer has good and clean title to the Property following the Conveyance Date and, if necessary, execute a replacement deed or document evidencing ownership of the Property by the Buyer in order for Escrow Agent to affect the recording after the Conveyance Date. Buyer agrees to pay to Escrow Agent all applicable fees necessary to affect the recording, which fees are solely Buyer's obligation, including, but not limited to, commercially reasonable fees charged by Escrow Agent to affect the recording, recording fees, and documentary transfer taxes (collectively, "**Recording Fees**"). Escrow Agent shall have no obligation to record the Deed unless and until Escrow Agent has received sufficient Recording Fees to affect the recording of the Deed. Buyer shall be entitled to deliver Escrow Agent the applicable Recording Fees at any time following the Effective Date; provided, however, that Buyer agrees to use its reasonable best efforts to provide Escrow Agent with the Recording Fees on or before the Conveyance Date or as soon as reasonably practicable following the Conveyance Date. Escrow Agent agrees to return any unused Recording Fees to Buyer as soon as reasonably practicable but no later than five (5) business days after it has affected the recording of the Deed, to the extent there are any unused Recording Fees in Escrow Agent's possession. For purposes of this Agreement, the "**Conveyance Date**" means the date that Escrow Agent receives the Recording Instructions.

Section 2.2  **Promissory Note Event of Default.**  Upon the occurrence of an Event of Default (as defined in the Promissory Note) under the Promissory Note that is not cured prior to the end of the applicable Cure Period (as defined in the Promissory Note), Seller shall have the right to instruct Escrow Agent to cancel escrow and return the Deed to Seller or to destroy the Deed, and thereafter Seller shall retain title to the Property and have no obligation or duty to convey title to Buyer. As of the date escrow is cancelled, Seller shall be entitled to retain all amounts paid under the Promissory Note as of such date and neither Seller nor Buyer shall have any further obligations under this Agreement or the Promissory Note unless otherwise expressly provided herein or therein.

Section 2.3  **Insurance.**  Buyer agrees to obtain a commercially reasonable and adequate insurance policy covering the Property (the "**Insurance Policy**"), to be effective beginning on the Effective Date, and to add Seller as an additional insured to such Insurance Policy. Buyer agrees that Seller shall remain an additional insured on such Insurance Policy through the date Buyer records the Deed pursuant to Section 2.1.

# Article III
## Representations and Warranties

**Section 3.1**    **Seller's Representations and Warranties.** Seller, to the actual knowledge of Joe Knierien and Robert Baker, obtained upon exercising a full and complete inquiry into those items for which Seller's knowledge and warranties are given, represents and warrants to Buyer as follows:

      (a)    This Agreement and all documents required hereby to be executed by Seller are and shall be valid, legally binding obligations of Seller, enforceable against Seller in accordance with their terms.

      (b)    Seller is a general partnership, duly organized, validly existing and in good standing under the laws of the State of California, and legally authorized to transact business in the State of California.

      (c)    Seller has the power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereunder, and all such action has been duly and validly authorized by all necessary proceedings on behalf of Seller.

      (d)    Neither the execution and delivery of this Agreement, the consummation of the transactions contemplated herein, nor the performance of or compliance with the terms and conditions hereof will conflict with or result in a breach of or a default under: (i) the organizing document or bylaws of Seller; or (b) any agreement or instrument to which Seller is a party or by which it or any of its properties (now owned or acquired in the future) may be subject or bound.

      (e)    Seller has paid all local, state and federal taxes attributable to the period prior to Closing which, if not paid, could constitute a lien on the Property (including any personal property), or for which Buyer may be held liable after Closing.

      (f)    Seller is not aware of any concealed or latent material defects in the Property.

      (g)    There are no Hazardous Substances currently located in, on, or under the Property in a manner or quantity that presently violates any Environmental Law, there are no underground storage tanks located on the Property, and there is no pending or threatened investigation or remedial action by any governmental agency regarding the release of Hazardous Substances or the violation of Environmental Law at the Property. As used herein, the term "Hazardous Substances" shall mean any substance or material now or hereafter defined or regulated as a hazardous substance, hazardous waste, toxic substance, pollutant, or contaminant under any federal, state or local law, regulation or ordinance governing any substance that could cause actual or suspected harm to human health or the environment ("**Environmental Law**").

      (h)    Seller has received no notice of, and there is not pending or to Seller's knowledge threatened, any litigation, condemnation, investigation or other legal proceeding affecting Seller, the Property or any portion thereof, and there are no actions, suits, proceedings, orders, administrative proceedings or investigations pending or to Seller's knowledge threatened against or affecting Seller or the Property which might materially and adversely affect any of the following: (i) Seller's performance under this Agreement; (ii) the current zoning status of the Property; or (iii) Buyer's ability to continue the present operations on the Property as currently conducted; and there are no pending or to Seller's knowledge threatened public improvements in, about, or outside the Property which have resulted in or might result in the imposition of any assessment, lien, or charge against Seller or the Property.

(i)     Seller has good, clean, valid, and marketable title to the property, free and clear from any and all encumbrances other than the Mortgage, and Seller is the record owner in fee simple of the Property.

**Section 3.2      Buyer's Representations and Warranties**. Buyer represents and warrants to Seller as follows:

(a)     This Agreement and all documents required hereby to be executed by Buyer are and shall be valid, legally binding obligations of Buyer, enforceable against Buyer in accordance with their terms.

(b)     Buyer is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware.

(c)     Buyer has the power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereunder, and all such action has been duly and validly authorized by all necessary proceedings on behalf of Buyer.

(d)     Neither the execution and delivery of this Agreement, the consummation of the transactions contemplated herein, nor the performance of or compliance with the terms and conditions hereof will conflict with or result in a breach of or a default under: (i) the organizational documents of Buyer; or (ii) any agreement or instrument to which Buyer is a party or by which it or any of its properties (now owned or acquired in the future) may be subject or bound.

**Article IV**
**Closing**

**Section 4.1      Time and Place of Closing**.   The purchase and sale contemplated by this Agreement shall be consummated at a closing (the "**Closing**") through the electronic exchange of documents on the Effective Date (the "**Closing Date**").

**Section 4.2      Closing Deliveries**. At the Closing the following shall occur:

(a)     The Seller shall deliver the Deed conveying title to the Property to Escrow Agent, to be held in escrow by Escrow Agent until Recording Instructions are delivered to Escrow Agent or such other instructions are delivered in writing from Seller and Buyer to Escrow Agent pursuant to Section 2.1 or Seller to Escrow Agent pursuant to Section 2.2;

(b)     Possession of the Property shall be delivered to Buyer;

(c)     Seller shall assign to Buyer its entire interest in any remaining guaranty or warranty relating to the Property; and

(d)     Buyer shall have obtained the Insurance Policy and provide proof to Seller that it has been added as an additional insured on such Insurance Policy.

**Section 4.3      Costs**.

(a)　Buyer covenants and agrees that it shall pay all costs, including, but not limited to, the cost of any title policy, Deed recording fees and any recording costs of any documents needed to clear unsatisfactory title matters at the Conveyance Date. In the event there are unsatisfactory title matters the Seller agrees to reimburse Buyer for any reasonable out of pocket expenses incurred to clear title matters that resulted prior to the Effective Date.

(b)　The cost of real estate transfer taxes shall be borne by Buyer.

(c)　All real estate taxes and other assessments assessed against the Property, together with all other rents, utilities and other expenses associated with the Property, shall be prorated as of the Closing Date. Real estate taxes shall be prorated on a fiscal year basis for the fiscal year in which the Closing Date occurs, based upon real estate taxes levied or estimated to be levied in that year by each taxing body and based upon the fiscal year of the taxing body (it being understood that if taxes are billed in arrears, Seller shall be responsible for all taxes applicable through the Closing Date, even if billed after the Closing Date). If the Closing Date shall occur before the tax rates or assessments are fixed, the apportionment of such taxes shall be upon the basis of the tax rate for the immediately preceding year applied to the latest valuation, and adjustment will be made upon the actual tax amount, when determined. If the actual amount of such real estate taxes for the year in which the Closing Date shall occur shall be different than that upon which such proration is based, a final adjustment will be made based upon the actual tax amount.

(d)　Seller shall be responsible for all municipal charges and other services through the Closing Date, and Buyer shall be responsible for all such charges on and after the Closing Date.

(e)　The provisions of this Section shall survive Closing.

## Article V
## Indemnification

**Section 5.1**　**Buyer Indemnification and Release**. Buyer hereby agrees to indemnify, defend and hold Seller harmless from and against any and all losses, liabilities, damages, fees, deficiencies, actions, judgments, interest, awards, penalties, fines costs, or other expenses of whatever kind (collectively, "**Losses**") incurred or sustained by, or imposed upon, Seller based upon, arising out of, or with respect to (a) any failure by Buyer to make timely payments under the Mortgage or failing to pay the Mortgage in full, (b) any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement, any other document to be delivered herewith, or any schedule, certificate, or exhibit related thereto, as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties that expressly relate to a specified date, the inaccuracy in or breach of which will be determined with reference to such specified date); (c) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Buyer pursuant to this Agreement, any other document to be delivered herewith, or any schedule, certificate, or exhibit related thereto.

**Section 5.2**　**Seller Indemnification and Release**. Seller hereby agrees to indemnify, defend and hold Buyer harmless from and against any and all Losses incurred or sustained by, or imposed upon, Buyer based upon, arising out of, or with respect to (a) any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement, any other document to be delivered herewith, or any schedule, certificate, or exhibit related thereto, as of the date such representation or warranty was made or as if such representation or warranty was made on and as of the Closing Date (except for representations and warranties that expressly relate to a specified date, the inaccuracy in or

breach of which will be determined with reference to such specified date); (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by Seller pursuant to this Agreement, any other document to be delivered herewith, or any schedule, certificate, or exhibit related thereto; and (c) any claims, demands, penalties, fines, taxes or other loss resulting from the assertion against the Buyer of claims by any governmental entity/agency/department or any other person/entity arising before the Closing Date as a direct result of Seller's or Seller's agents', employees', invitees' and/or assigns' actions or omissions prior to the Closing Date and not fully disclosed herein or not specifically excepted by the provisions hereof.

Section 5.3    **Indemnification Procedures**.    Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "**Indemnified Party**") shall promptly provide written notice of such claim to the other party (the "**Indemnifying Party**"). In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any action by a person who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such action, the Indemnified Party may, but shall not be obligated to, defend against such action in such manner as it may deem appropriate, including settling such action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

Section 5.4    **Cumulative Remedies**.    The rights and remedies provided in this Article V are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

**Article VI**
**General Provisions**

Section 6.1    **Commissions**.

(a)    Seller represents and warrants that neither Seller, nor any of its officers, directors, employees or agents, has dealt with, or incurred any liability to, any consultant or broker in connection with the transaction contemplated by this Agreement.

(b)    Each of Seller and Buyer hereby agrees to indemnify, defend and hold the other harmless from and against any and all loss, cost, damage or expense (including, but not limited to, reasonable attorneys' fees and costs of litigation) that such indemnified party may ever suffer or incur by reason of any demand or claim, whether or not meritorious, by any broker or agent for any fee, commission or other compensation with respect to this Agreement or the sale or purchase of the Property contemplated herein which arises out of any act or agreement of such indemnifying party.

Section 6.2    **Notices**.    All notices, demands, requests, consents, approvals or other instruments required or permitted to be given pursuant hereto shall be in writing and shall be deemed to have been given and received upon (a) receipt, if hand delivered, (b) transmission if delivered by facsimile or electronic mail transmission (as evidenced by electronic confirmation of transmission generated by the sender's facsimile machine or electronic mail), (c) the next business day, if delivered by express delivery

service or overnight courier service, or (d) the third business day following the day of deposit of such notice in registered or certified mail, return receipt requested. Notices shall be provided to the addresses (or facsimile numbers, as applicable) specified below:

If to Buyer:

MagneGas Real Estate Holdings, LLC
24980 N. 83rd Avenue, Ste. 100
Peoria, AZ 85383
Attn: General Counsel
Email: notices@taronisfuels.com

If to Seller:

Joseph Knieriem
6151 Quincewood Circle
Citrus Heights, CA 95621
Email: joeathome53@gmail.com

And

Robert Baker
9737 Dynasty Way
Elk Grove, CA 95624
Email: robertbaker@magnegas.com

If to Escrow Agent:

Law Offices of Robin Clark Bevier, PC
2479 Sunrise Blvd
Gold River, CA 95670
Attn: Robin Clark Bevier, Esq.
Email: rbevier@robinbevier.com
Phone: (916) 858-0904
Facsimile: (916) 859-4895

**Section 6.3**    **Further Assurances**. Each of the parties undertakes and agrees to execute and deliver such documents, writings and further assurances as may reasonably be required to carry out the intent and purpose of this Agreement, including conveyance of clean title to the Property upon repayment of the Mortgage.

**Section 6.4**    **Amendment; Waiver; Entire Agreement.** No change or modification of this Agreement shall be valid unless the same is in writing and signed by both parties. No waiver of any of the provisions of this Agreement shall be valid unless in writing and signed by the party against whom it is sought to be enforced. This Agreement contains the entire agreement between the parties relating to the purchase and sale of the Property. All prior negotiations between the parties are merged in this Agreement, and there are no promises, agreements, conditions, undertakings, warranties or representations, oral or written, express or implied, regarding the purchase of the Property between the parties other than as herein set forth. In no event shall this Agreement or any memorandum hereof be recorded, and any such recordation or attempted recordation shall constitute a material breach hereof.

**Section 6.5    Governing Law**. This Agreement shall be construed and enforced in accordance with the laws of the State of California, without regard to conflict of laws principles. Any and all recitals or disclosures required by such laws or necessary thereunder to effectuate the expressed intent of the parties herein are hereby deemed incorporated into this Agreement by this reference; provided that should any such incorporated provision conflict with the express printed provisions hereof, the latter shall in all respects be controlling.

**Section 6.6    Headings**. The paragraph headings which appear in some of the Sections of this Agreement are for purposes of convenience and reference and are not in any sense to be construed as modifying the Sections in which they appear.

**Section 6.7    Confidentiality**. Buyer and Seller agree to maintain the confidentiality of the terms and conditions of this Agreement, the transactions contemplated hereunder, and shall not disclose any such information without the consent of the applicable party. The provisions of this Section shall survive the expiration or termination of this Agreement.

**Section 6.8    Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns. Neither party may assign its right, title and/or interest in this Agreement without the prior consent of the other party hereto; provided, however, that any such permitted assignment shall not release the assignor from its obligations hereunder.

**Section 6.9    Survival**. All covenants and agreements of the parties, including, but not limited to, all indemnity obligations, which, by the express context of this Agreement, are to be performed after or are to survive the termination of this Agreement or the Closing, shall, as the case may be, survive the Closing or the termination of this Agreement for such time expressly stated.

**Section 6.10    Counterparts.** This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute only one agreement.

**Section 6.11    Attorneys' Fees.** In the event of any action at law or in equity between Seller and Buyer to enforce any of the provisions and/or rights under this Agreement or on account of a breach of any term or provision hereof, the unsuccessful party to such litigation agrees to pay to the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred therein by such prevailing party, including any such costs and expenses incurred in any appeal, and if such prevailing party shall recover judgment in any action or proceeding, such costs, expenses and fees shall be included in and as a part of such judgment. As used herein the term "prevailing party" shall be the party to such litigation which receives, whether by settlement or judgment, substantially the relief requested. This provision shall survive Closing or any termination of this Agreement.

**Section 6.12    Construction**. The terms and provisions of this Agreement represent the results of negotiations between Seller and Buyer, each of which are financially sophisticated parties and each of which has been represented or been given the opportunity to be represented by counsel of its own choosing, and neither of which has acted under any duress or compulsion, whether legal, economic or otherwise. Consequently, the terms and provisions of this Agreement shall be interpreted and construed in accordance with their usual and customary meanings, and Seller and Buyer each hereby waive the application of any rule of law which would otherwise be applicable in connection with the interpretation and construction of this Agreement that ambiguous or conflicting terms or provisions contained in this Agreement shall be interpreted or construed against the party whose attorney prepared the executed Agreement or any earlier draft of the same. The parties agree that, regardless of which party provided the initial form of this Agreement, drafted or modified one or more provisions hereof, or compiled, printed or

copied this Agreement, this Agreement shall be construed solely as an offer to purchase from Buyer, executed by Buyer and provided to Seller for acceptance on the terms set forth herein, which acceptance and the existence of a binding agreement between Buyer and Seller shall be evidenced by the execution hereof by Seller. The parties agree that if any part of this Agreement is determined to be unlawful, unenforceable or against public policy, the remaining parts of this Agreement shall continue to be fully effective and enforceable.

      **Section 6.13**    **Arm's Length Transaction.** Nothing contained in this Agreement or the activities contemplated hereby shall be construed to create the relationship of principal and agent, partnership, joint venture, trust, tenants in common or any other relationship between the parties hereto other than separate and distinct persons and entities dealing at arm's length as Seller and Buyer respectively for their own separate interests and benefits.

      **Section 6.14**    **Force Majeure.** Buyer and Seller shall be excused for the period of any delay in performance of any obligations hereunder because of labor disputes, civil disturbance, war, war-like operations, invasions, rebellion, hostilities, military or usurped power, sabotage, governmental regulations or controls, fires or other casualty, inclement or adverse weather of unusual amount or duration for the subject season or acts of God. To be entitled to an excuse for any delay or failure to perform under this Agreement pursuant to this Section, the party claiming such excuse shall promptly give written notice to the other party hereto of any event or occurrence which the notifying party asserts to be within the contemplation of this Section and shall exercise all reasonable efforts to remove the cause of such delay.

      **Section 6.15**    **Power of Attorney.** On the Effective Date the Seller hereby grants the Buyer and irrevocable power of attorney coupled with an interest to file the Deed upon full repayment of the Mortgage and take any other action necessary to perfect its ownership interest in Property.

[Signature Page Follows]

[The Remainder of This Page is Left Intentionally Blank]

IN WITNESS WHEREOF, the parties have caused this Real Estate Purchase and Sale Agreement to be executed by their duly authorized representatives as of the Effective Date.

**Seller:**                                      **Buyer:**

**LBJ**                                          **MAGNEGAS REAL ESTATE HOLDINGS, LLC**

By: _____ 1/5/21             By: _____
Name:   Joe Knieriem                            Name: Scott Mahoney
Title:     Authorized Signatory                 Title: Manager

By: _____ 1/5/21
Name: Robert Baker
Title: Authorized Signatory

**Escrow Agent:**
*Solely for purposes of Section 2.1*

**LAW OFFICES OF ROBIN CLARK BEVIER, PC**

By: _____ 1/5/21
Name: Robin Bevier
Title: Senior Partner

**[SIGNATURE PAGE TO REAL ESTATE PURCHASE AND SALE AGREEMENT]**

## SCHEDULE 1.3

### Wire Instructions

To be provided.

## EXHIBIT A

### Legal Description

The land referred to is situated in the County of Yolo, City of Woodland, State of California, and is described as follows:

PARCEL ONE:

The West 375 feet of the parcel of land described as follows:

Beginning at a the Northeast corner of Section 28, Township 10 North, Range 2 East, M.D.B.&M., according to the Official Plat thereof; running thence along the North line of said Section 28, South 89° 59' 30" West 666.67 feet to the West line of the Parcel of land described in the Deed to Owen Dinsdale, recorded July 28, 1885, in Book 38 of Deeds, Page 576; thence along said West line South 0° 02' East 280.75 feet to the North line of the parcel of land described in the Deed to Ford G. Shaffer, et ux, recorded August 24, 1944, in Book 203 of Official Records, Page 196; thence along said North line North 88° 51' East 666.54 feet to the East line of said Section 28; thence along said East line North 267.47 feet to the point of beginning.

EXCEPTING THEREFROM, that portion thereof described in the Deed to the City of Woodland, recorded June 17, 1994, in Book 2556 of Official Records, Page 646.

PARCEL TWO:

A non-exclusive easement for road purposes over the West 27 feet, measured perpendicular from the West line of the parcel of land described in the Deed of Trust executed by Pierce O. Hatcher, et ux, recorded March 28, 1963 in Book 707 of Official Records, Page 562.

APN: 63-020-09

## EXHIBIT B

### Form of Promissory Note

### PROMISSORY NOTE

**Borrower:** MagneGas Real Estate Holdings, LLC

**Lender(s):** Joseph Knieriem; Robert Baker

| | |
|---|---|
| **Date of Note**: January 4, 2021 | **Interest Rate**: 5% per year |

**PROMISE TO PAY**. MagneGas Real Estate Holdings, LLC, a Delaware limited liability company (the "**Borrower**"), promises to pay to Joseph Knieriem and Robert Baker (collectively the "**Lender**"), without set off, in lawful money of the United States of America, the principal amount of **Nine Hundred Ninety Fours Thousand Five Hundred Thirty Nine and 28/100 ($994,539.28)** ("**Principal**"), together with interest at the rate of Five Percent (5%) per annum on the unpaid outstanding principal balance of this Promissory Note ("**Interest**"). Interest shall accrue on the unpaid balance of this Promissory Note using an Actual/360 day counting method. Payments will be made 50% to Joseph Knieriem and 50% to Robert Baker to accounts of their direction.

**REPAYMENT**. The Borrower shall make payments of Principal and Interest in equal monthly installments on the first day of each month, beginning on February 1, 2021. The Principal shall be amortized over a ten (10) year period beginning on February 1, 2021.

**MATURITY DATE**. The Principal amount and accrued Interest on this Promissory Note must be paid in full on or before February 1, 2023. If, on the Maturity Date, Borrower still owes any amount of Principal or accrued Interest on this Promissory note, Borrower will pay those amounts in full on such date. The Lender may, at its option and in its sole discretion, extend the Maturity Date.

**BANK INFORMATION; WIRE INSTRUCTIONS.** All amounts due hereunder shall be payable to the nominated bank account(s) of the Lender.

**MAXIMUM INTEREST AMOUNT.** Any amount assessed or collected as Interest under the terms of this Promissory Note will be limited to the maximum amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance of the Promissory Note and any remainder will be paid to the Lender as a fee.

**PREPAYMENT**. The Borrower may prepay Principal plus accrued Interest at any time.

**DEFAULT**. The following shall constitute an event of default ("**Event of Default**") under this Promissory Note: Payment Default. A "**Payment Default**" means the Borrower fails to make any payment when due after the expiration of the applicable Cure Period (defined below).

Borrower agrees that if an Event of Default occurs, Lender at its sole option may, after expiration of the Cure Period, without notice or demand, except as otherwise required by statute or otherwise specifically provided in this Note, accelerate the maturity of this Note and declare the entire unpaid principal balance and all accrued interest at once due and payable, and exercise all other rights and remedies Lender may

have under this Note and the Subordinated Deed of Trust, including any one or more of the foregoing remedies.

Upon the occurrence of an Event of Default, after the expiration of the Cure Period, the outstanding principal and all accrued and unpaid interest of this Promissory Note shall bear interest at a rate of 10% per annum, compounded annually from the date of such Event of Default until such principal and accrued interest (and any interest accruing thereon after the occurrence of such Event of Default) shall be paid in full.

Upon the occurrence of an Event of Default, after the expiration of the Cure Period, Lender shall have the right to instruct Escrow Agent (as defined in that certain Purchase and Sale Agreement between Lender, Borrower, and Escrow Agent dated as of the date hereof (the "**Purchase Agreement**")) to cancel escrow and return the Deed (as defined in the Purchase Agreement) to Lender or to destroy the Deed, and thereafter Lender shall retain title to the Property (as defined in the Purchase Agreement) and have no obligation or duty to convey title to Buyer. As of the date escrow is cancelled, Lender shall be entitled to retain all amounts paid under the Promissory Note as of such date and neither Lender nor Borrower shall have any further obligations under this Promissory Note or the Purchase Agreement unless otherwise expressly provided herein or therein.

**OPPORTUNITY TO CURE**. Except as otherwise stated herein, upon any Event of Default, Borrower shall be entitled to written notice describing the asserted Event of Default and a thirty (30) calendar day opportunity to cure commencing on the date written notice is received by the Borrower (the "**Cure Period**") before Lender may, at its sole option, declare Borrower is in full non-cure default. If Borrower defaults upon this Promissory Note, Lender shall deliver written notice to Borrower via email to notices@taronisfuels.com notifying Borrower of such default and the reasonable particulars of such default. Receipt of notice shall be deemed received on the date upon which the written notice is sent to the above referenced email addresses.

**GOVERNING LAW**. This Promissory Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Promissory Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE**. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Yolo County, State of California.

**ATTORNEY'S FEES.** If Lender requires the services of an attorney to enforce the payment of this Note or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrower agrees to pay Lender all court costs, attorney's fees and expenses, and other collection costs incurred by Lender.

**DISHONORED ITEM FEE**. Borrower will pay a fee to Lender of $500.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS**. The terms of this Promissory Note shall be binding upon Borrower and shall inure to the benefit of Lender and its successors and assigns.

| | |
|---|---|
| Borrower's Initials<br><br>_____ | **NO ORAL AGREEMENTS. This written agreement is the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and Borrower.** |
| Lender's Initials<br><br>_____<br><br>_____ | **By initialing the boxes to the left, Lender and Borrower affirm that no unwritten oral agreement exists between them.** |

[Signature Page Follows]

[The Remainder of This Page is Intentionally Blank]

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

**MagneGas Real Estate Holdings, LLC**

**[exhibt do not sign]**

_____

By: Scott Mahoney
Its: Manager

**LENDER:**

**Joseph Knieriem**

**[exhibt do not sign]**

_____

**Robert Baker**

**[exhibt do not sign]**

_____

**EXHIBIT C**
**Form of Grant Deed**

Recording Requested By:

And when recorded, mail this deed
 and tax statements to (name and address):

_____

_____

_____

## GRANT DEED

Grant Deed APN:_____

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
_____, hereby
grant(s) to (Current Owner(s), including form of title)
_____, as (New
Owner(s), including form of title)

_____
____, (An Unmarried Person/Joint Tenants / Tenants in Common / Community Property with
Rights of Survivorship / Etc.)

The following real property in the City of _____, County of
_____, California: (attach legal description to this document)

Date: _____  _____
(Signature) _____ (Typed or written name)

Date: _____  _____
(Signature) _____ (Typed or written name)

Certificate of Acknowledgement

STATE OF _____

COUNTY OF _____

On _____ before me,_____ _____, (Name and
Title of Officer) personally appeared _____, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are

subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and Official seal (seal)

_____ (Signature of Notary)

# PROMISSORY NOTE

**Borrower:** MagneGas Real Estate Holdings, LLC

**Lender(s):** Joseph Knieriem; Robert Baker

| | |
|---|---|
| **Date of Note**: January 4, 2021 | **Interest Rate**: 5% per year |

**PROMISE TO PAY**. MagneGas Real Estate Holdings, LLC, a Delaware limited liability company (the "**Borrower**"), promises to pay to Joseph Knieriem and Robert Baker (collectively the "**Lender**"), without set off, in lawful money of the United States of America, the principal amount of **Nine Hundred Ninety Fours Thousand Five Hundred Thirty Nine and 28/100 ($994,539.28)** ("**Principal**"), together with interest at the rate of Five Percent (5%) per annum on the unpaid outstanding principal balance of this Promissory Note ("**Interest**"). Interest shall accrue on the unpaid balance of this Promissory Note using an Actual/360 day counting method. Payments will be made 50% to Joseph Knieriem and 50% to Robert Baker to accounts of their direction.

**REPAYMENT**. The Borrower shall make payments of Principal and Interest in equal monthly installments on the first day of each month, beginning on February 1, 2021. The Principal shall be amortized over a ten (10) year period beginning on February 1, 2021.

**MATURITY DATE**. The Principal amount and accrued Interest on this Promissory Note must be paid in full on or before February 1, 2023. If, on the Maturity Date, Borrower still owes any amount of Principal or accrued Interest on this Promissory note, Borrower will pay those amounts in full on such date. The Lender may, at its option and in its sole discretion, extend the Maturity Date.

**BANK INFORMATION; WIRE INSTRUCTIONS.** All amounts due hereunder shall be payable to the nominated bank account(s) of the Lender.

**MAXIMUM INTEREST AMOUNT.** Any amount assessed or collected as Interest under the terms of this Promissory Note will be limited to the maximum amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance of the Promissory Note and any remainder will be paid to the Lender as a fee.

**PREPAYMENT**. The Borrower may prepay Principal plus accrued Interest at any time.

**DEFAULT**. The following shall constitute an event of default ("**Event of Default**") under this Promissory Note: Payment Default. A "**Payment Default**" means the Borrower fails to make any payment when due after the expiration of the applicable Cure Period (defined below).

Borrower agrees that if an Event of Default occurs, Lender at its sole option may, after expiration of the Cure Period, without notice or demand, except as otherwise required by statute or otherwise specifically provided in this Note, accelerate the maturity of this Note and declare the entire unpaid principal balance and all accrued interest at once due and payable, and exercise all other rights and remedies Lender may have under this Note and the Subordinated Deed of Trust, including any one or more of the foregoing remedies.

Upon the occurrence of an Event of Default, after the expiration of the Cure Period, the outstanding principal and all accrued and unpaid interest of this Promissory Note shall bear interest at a rate of 10% per annum, compounded annually from the date of such Event of Default until such principal and accrued

interest (and any interest accruing thereon after the occurrence of such Event of Default) shall be paid in full.

Upon the occurrence of an Event of Default, after the expiration of the Cure Period, Lender shall have the right to instruct Escrow Agent (as defined in that certain Purchase and Sale Agreement between Lender, Borrower, and Escrow Agent dated as of the date hereof (the "**Purchase Agreement**")) to cancel escrow and return the Deed (as defined in the Purchase Agreement) to Lender or to destroy the Deed, and thereafter Lender shall retain title to the Property (as defined in the Purchase Agreement) and have no obligation or duty to convey title to Buyer. As of the date escrow is cancelled, Lender shall be entitled to retain all amounts paid under the Promissory Note as of such date and neither Lender nor Borrower shall have any further obligations under this Promissory Note or the Purchase Agreement unless otherwise expressly provided herein or therein.

**OPPORTUNITY TO CURE**. Except as otherwise stated herein, upon any Event of Default, Borrower shall be entitled to written notice describing the asserted Event of Default and a thirty (30) calendar day opportunity to cure commencing on the date written notice is received by the Borrower (the "**Cure Period**") before Lender may, at its sole option, declare Borrower is in full non-cure default. If Borrower defaults upon this Promissory Note, Lender shall deliver written notice to Borrower via email to notices@taronisfuels.com notifying Borrower of such default and the reasonable particulars of such default. Receipt of notice shall be deemed received on the date upon which the written notice is sent to the above referenced email addresses.

**GOVERNING LAW**. This Promissory Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Promissory Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE**. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Yolo County, State of California.

**ATTORNEY'S FEES.** If Lender requires the services of an attorney to enforce the payment of this Note or if this Note is collected through any lawsuit, probate, bankruptcy, or other judicial proceeding, Borrower agrees to pay Lender all court costs, attorney's fees and expenses, and other collection costs incurred by Lender.

**DISHONORED ITEM FEE**. Borrower will pay a fee to Lender of $500.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS**. The terms of this Promissory Note shall be binding upon Borrower and shall inure to the benefit of Lender and its successors and assigns.

| Borrower's Initials | **NO ORAL AGREEMENTS. This written agreement is the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any prior oral agreement or of a contemporaneous oral agreement between Lender and Borrower.** |
| --- | --- |
| _SM_ | |
| Lender's Initials | **By initialing the boxes to the left, Lender and Borrower affirm that no unwritten oral agreement exists between them.** |
| _1/5/21_ _1/5/21_ | |

[Signature Page Follows]

[The Remainder of This Page is Intentionally Blank]

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

**MagneGas Real Estate Holdings, LLC**

By: Scott Mahoney
Its: Manager

**LENDER:**

**Joseph Knieriem**

1/5/21

**Robert Baker**

1/5/21

## Exhibit A

The land referred to is situated in the County of Yolo, City of Woodland, State of California, and is described as follows:

PARCEL ONE:

The West 375 feet of the parcel of land described as follows:

Beginning at a the Northeast corner of Section 28, Township 10 North, Range 2 East, M.D.B.&M., according to the Official Plat thereof; running thence along the North line of said Section 28, South 89° 59' 30" West 666.67 feet to the West line of the Parcel of land described in the Deed to Owen Dinsdale, recorded July 28, 1885, in Book 38 of Deeds, Page 576; thence along said West line South 0° 02' East 280.75 feet to the North line of the parcel of land described in the Deed to Ford G. Shaffer, et ux, recorded August 24, 1944, in Book 203 of Official Records, Page 196; thence along said North line North 88° 51' East 666.54 feet to the East line of said Section 28; thence along said East line North 267.47 feet to the point of beginning.

EXCEPTING THEREFROM, that portion thereof described in the Deed to the City of Woodland, recorded June 17, 1994, in Book 2556 of Official Records, Page 646.

PARCEL TWO:

A non-exclusive easement for road purposes over the West 27 feet, measured perpendicular from the West line of the parcel of land described in the Deed of Trust executed by Pierce O. Hatcher, et ux, recorded March 28, 1963 in Book 707 of Official Records, Page 562.

APN: 63-020-09

## Escrow Instructions

On this 4th day of January, 2021 (the "**Effective Date**"), **LBJ**, a California general partnership (the "**Seller**") and **MAGNEGAS REAL ESTATE HOLDINGS, LLC**, a Delaware limited liability company (the "**Buyer**"), hereby deliver these Escrow Instructions to the Law Offices of Robin Clark Bevier, PC, located at 2479 Sunrise Boulevard, Gold River, CA 95670 ("**Escrow Agent**"). Reference is made to that certain Real Estate Purchase and Sale Agreement, dated as of the Effective Date, by and between Seller, Buyer, and solely for purposes of Section 2.1 of such agreement, the Escrow Agent (the "**Purchase Agreement**"). Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in the Purchase Agreement.

On the Effective Date, Seller will execute a Deed conveying title to the Property and deliver it to Escrow Agent to hold in escrow pursuant to the terms of these Escrow Instructions. Seller and Buyer hereby instruct and inform Escrow Agent as follows with respect to the Deed and escrow:

1. Seller and Buyer hereby instruct Escrow Agent to hold the Deed in escrow. Escrow Agent shall hold the Deed in Escrow Agent's safe or another secure location at Escrow Agent's premises.

2. Seller and Buyer hereby instruct Escrow Agent to hold the Deed in escrow until mutual written instructions are received from both Seller and Buyer instructing Escrow Agent to (a) record the Deed (the "**Recording Instructions**") or (b) take any other action with respect to the Deed and escrow.

3. Seller and Buyer agree to deliver the Recording Instructions to Escrow Agent as soon as possible but no later than three (3) business days following the date upon which Wells Fargo Bank, N.A. releases title to the Property by recording a full reconveyance. Seller and Buyer agree to take commercially reasonable steps to work with Wells Fargo Bank, N.A. to have it promptly record the full reconveyance and provide evidence of payoff following the date the Mortgage is paid in full.

4. Following receipt of the Delivery Instructions and Recording Fees, Escrow Agent is hereby instructed by Seller and Buyer to record the Deed as soon as possible but no later than five (5) business days after the date Escrow Agent has received both the Recording Instructions and Recording Fees, and shall promptly provide evidence of such recording to Buyer and Seller; provided, however, that in the event there are any issues with the recording of the Deed due to issues with title, Buyer not delivering sufficient Recording Fees to Escrow Agent to complete the recording, or otherwise, Escrow Agent shall have such additional time as necessary to effect the recording and soon as reasonably practicable following the Conveyance Date and shall promptly provide evidence of such recording to Seller and Buyer.

5. Buyer agrees to pay to Escrow Agent all applicable fees necessary to affect the recording, which fees are solely Buyer's obligation, including, but not limited to, commercially reasonable fees charged by Escrow Agent to affect the recording, recording fees, and documentary transfer taxes (as defined in the Purchase Agreement,

IN WITNESS WHEREOF, the parties have caused these Escrow Instructions to be executed by their duly authorized representatives as of the Effective Date.

**Seller:**                                              **Buyer:**

**LBJ**                                                  **MAGNEGAS REAL ESTATE HOLDINGS, LLC**

By: _____ 1/5/21                      By: _____
Name: Joe Knieriem                                       Name: Scott Mahoney
Title:   Authorized Signatory                            Title: Manager

By: _____ 1/5/21
Name: Robert Baker
Title: Authorized Signatory


**AGREED AND ACKNOWLEDGED ON THE EFFECTIVE DATE**

**Escrow Agent:**

**LAW OFFICES OF ROBIN CLARK BEVIER, PC**

By: _____
Name: Robin Bevier
Title: Senior Partner

Recording Requested By:

And when recorded, mail this deed
and tax statements to (name and address):

MagneGas Real Estate Holdings, LLC
c/o Legal Department
24980 N. 83rd Avenue, Ste. 100
Peoria, AZ 85383

---

## GRANT DEED

Grant Deed APN: 63-020-09

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, LBJ a
California general partnership comprised of two living partners – Joseph Knieriem and Robert
Baker, (Current Owner(s), including form of title) hereby grant(s) to MagneGas Real Estate
Holdings, LLC, a Delaware limited liability company authorized to do business in the State of
California, as (New Owner(s), including form of title);

The following real property in the City of Woodland, County of Yolo, California:

The land referred to is situated in the County of Yolo, City of Woodland, State of California, and
is described as follows:

PARCEL ONE:

The West 375 feet of the parcel of land described as follows:

Beginning at a the Northeast corner of Section 28, Township 10 North, Range 2 East,
M.D.B.&M., according to the Official Plat thereof; running thence along the North line of said
Section 28, South 89° 59' 30" West 666.67 feet to the West line of the Parcel of land described
in the Deed to Owen Dinsdale, recorded July 28, 1885, in Book 38 of Deeds, Page 576; thence
along said West line South 0° 02' East 280.75 feet to the North line of the parcel of land
described in the Deed to Ford G. Shaffer, et ux, recorded August 24, 1944, in Book 203 of
Official Records, Page 196; thence along said North line North 88° 51' East 666.54 feet to the
East line of said Section 28; thence along said East line North 267.47 feet to the point of
beginning.

EXCEPTING THEREFROM, that portion thereof described in the Deed to the City of Woodland,
recorded June 17, 1994, in Book 2556 of Official Records, Page 646.

PARCEL TWO:

A non-exclusive easement for road purposes over the West 27 feet, measured perpendicular
from the West line of the parcel of land described in the Deed of Trust executed by Pierce O.
Hatcher, et ux, recorded March 28, 1963 in Book 707 of Official Records, Page 562.

APN: 63-020-09

Date) January 5, 2021

_____ (Signature)
Robert Baker (Typed or written name)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Certificate of Acknowledgement

STATE OF California

COUNTY OF Sacramento

On 05 January 2021 before me, Robin C Bevier_____, (Name and Title of Officer) personally appeared **ROBERT BAKER**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and Official seal (seal)

ROBIN C. BEVIER
Notary Public - California
Sacramento County
Commission # 2255309
My Comm. Expires Sep 19, 2022

_____ (Signature of Notary)

Date: January 5, 2021 (Signature)

Joseph Knieriem (Typed or written name)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Certificate of Acknowledgement

STATE OF ___California___

COUNTY OF ___Sacramento___

On ___05 January 2021___ before me, ___Robin C Bevier___, (Name and Title of Officer) personally appeared **JOSEPH KNIERIEM,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and Official seal (seal)

ROBIN C. BEVIER
Notary Public - California
Sacramento County
Commission # 2255309
My Comm. Expires Sep 19, 2022

_____ (Signature of Notary)